UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAOLA B. COLON,

               Plaintiff,

   -against-

GRAF REPETTI & CO., LLP and
FAMILY OFFICE GROUP, LLC,

             Defendants.

Civil Action
No.: 07-9572

Hon. Robert. P. Patterson, Jr.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT

---

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
*Attorneys for Defendants*
*Graf Repetti & Co., LLP and Family Office Group, LLC*

OF COUNSEL
    *David S. Sheiffer*
    *Susan K. Slim*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................................................iii

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS .......................................................................................................2

       The State Court Action ...................................................................................4

ARGUMENT ..........................................................................................................................8

I.  Plaintiff's Federal Action Is Barred by Fed. R. Civ. P. 12(b)(1)
    For Lack of Subject Matter Jurisdiction .................................................................9

      A.  The Rooker-Feldman Doctrine .........................................................10

      B.  The Doctrine of Collateral Estoppel ................................................12

II.  The Complaint Should Also Be Dismiss Pursuant Fed. R. Civ. P. 12(b)(6) .......13

      A.  § 105(a) of the Family and Medical Leave Act ...............................15

      B.  § 703(a)(1) of Title VII of the Civil Rights Act of 1964..................17

      C.  § 102(a) of Title I of the A.D.A. of 1990 .........................................21

CONCLUSION ......................................................................................................................23

CERTIFICATE OF SERVICE ...............................................................................................24

3071414.1

<u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp.2d 550 (S.D.N.Y. 2007) ..............8,9

*Arculeo v. On-Site Sales & Mktg., L.L.C.*, 425 F.3d 193 (2nd Cir. 2005)...............................10

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...............................................14

*Bond v. Sterling*, 997 F. Supp. 306 (N.D.N.Y. 1998) ...............................................22

*Chudnovsky v. Leviton Mfg. Co.*, 158 Fed. Appx. 312 (2nd Cir. 2005) ...............................17

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ...................................................12

*Conley v. United Parcel Service*, 88 F.Supp.2d 16 (E.D.N.Y. 2000)...................................22

*Corr v. MTA Long Island Bus*, 1999 U.S. App. LEXIS 25058 (2nd Cir. 1999)..........................10

*Dist. of Columbia Ct App. v. Feldman*, 460 U.S. 462 (1983) .......................................10

*Exxon Mobil Corp. v Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ...............................11

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ............................................20

*Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331 (S.D.N.Y. 2000) .....................................9

*Geromanos v. Columbia University*, 322 F.Supp.2d 420 (S.D.N.Y. 2004)..........................15, 16

*Green v Montgomery*, 43 F. Supp. 2d 239 (E.D.N.Y. 1999) ........................................12

*Harris v. Forklift Sys.*, 510 U.S. 17 (1993) .....................................................19

*Hayden v County of Nassau*, 180 F.3d 42 (2d Cir.1999)............................................9

*Hoblock v. Albany County Bd of Elections*, 422 F .3d 77 (2d Cir. 2005)............................11

*Jeanty v. County of Orange*, 379 F. Supp. 2d 533 (S.D.N.Y. 2005) .................................12

*Johnson v. DeGrandy*, 512 U.S. 997 (1994).......................................................11

*Kittay v. Kornstein*, 230 F.3d 531 (2d Cir. 2000) ...............................................12

*Luckett v. Bure*, 290 F.3d 493 (2d Cir. 2002) ....................................................8

*Mackenzie v. Donovan*, 375 F.Supp.2d 312 (S.D.N.Y. 2005) ........................................11

*Martinez v N.B.C. Inc. and M.S.N.B.C Inc.*, 49 F.Supp.2d 305 (S.D.N.Y. 1999) ................19, 22

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986).............................................19

*McDonnell Douglass v Green*, 411 U.S. 792 (1973) ................................................18

*Minott v. Port Authority of N.Y. and N.J.*, 116 F.Supp.2d 513 (S.D.N.Y. 2000) .....................22

*Mitchell v. Keane*, 974 F. Supp. 332 (S.D.N.Y. 1997) .............................................12

*Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674 (2d Cir. 1990) ......................8

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)...................................19

*Rooker v Fidelity Trust Co.*, 263 U.S. 413 (1923) ...............................................10

*Sabatino v. Flik International Corp*, 286 F.Supp.2d 327 (S.D.N.Y. 2003). ...............15

*Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994)...............................................9

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) .......................9

*Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74 (2d Cir. 2003)...................9

iv

## PRELIMINARY STATEMENT

In this pregnancy-based employment discrimination action, Defendants Graf Repetti & Co., LLP ("GR&C") and Family Office Group, LLC ("FOG"; collectively "defendants"), respectfully submit this Memorandum of Law in support of their motion for an Order to be entered dismissing plaintiff's Complaint in its entirety, and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, because Plaintiff Paola Colon ("plaintiff" or "Colon") has already asserted her claims in a state court action, wherein they were denied. Alternatively, the Complaint should be dismissed, with prejudice, pursuant to Fed. R Civ. P. 12 (b)(6), for failure to state a claim upon which relief may be granted.

As explained in further detail below, the Complaint now before this Article III Court is inextricably intertwined with a state litigation, portions of which are still pending in the Supreme Court of the State of New York, County of Westchester ("State Court Action"). By this federal complaint, plaintiff seeks a second bite at the apple, albeit with the "add-on" Title VII and American with Disability Act causes of action, because a state court of competent jurisdiction has already determined that: (1) at all times relevant herein, GR&C was not plaintiff's employer; and (2) plaintiff's allegations of discrimination under the FMLA are unviable and cannot be supported by documentary evidence. Accordingly, by reason of the Rooker-Feldman Doctrine and Collateral Estoppel, Colon is barred from re-litigating any claim already adjudicated on the merits in the State Court Action.

Even if this Court were to somehow find plaintiff should be permitted a second attack upon GR&C, or to pursue purported violations of the FMLA, in direct contravention of the decisions in the State Court Action, this latest complaint should still be dismissed with prejudice, pursuant to Fed. R. Civ. P Rule 12(b)(6), for failure to state a cause of action under which relief may be granted. Simply stated, neither pregnancy nor motherhood constitutes a "disability" as

defined under the ADA and conclusory allegations of discriminatory treatment alone are insufficient to sustain a Title VII action.

## STATEMENT OF FACTS

### Paola Colon's Employment

From September 11, 2002 to December 31, 2003, Paola Colon was employed as a receptionist at GR&C, a general public accounting firm. Ex. "A" at ¶3.[1] However, from January 1, 2004, until her termination on November 17, 2006, she worked as a bookkeeper and executive assistant exclusively for FOG, a firm that provides advisory, management, and bookkeeping services to high net worth clientele. Ex. "A" at ¶4. While GR&C and FOG are both located at 1114 Avenue of the Americas, New York, New York, the two firms are separate legal entities with separate files, financial records, employee health plans, payroll records, and tax and disability returns.

In mid-2006, Colon informed FOG management that she was pregnant and sought to make arrangements to continue working while caring for her infant child. Colon requested, and FOG agreed, that she could continue working from home, part-time, while caring for her infant child. Ex. "A" at ¶5-6. FOG granted her request and, further, continued to provide Colon with all fringe benefits, including health insurance, normally reserved for full-time employees, although it had no obligation to do so for a part-time employee. Ex. "A" at ¶6.

Pursuant to her arrangement with FOG, Colon was to work approximately 2 to 2 ½ days per week, for a maximum of 12 weeks, to enable her to continue working with "several [FOG] clients that "require[d] special attention." Ex. "B." In addition, to accommodate her request, FOG, at its own expense, installed phone and high speed data lines in Colon's home so that she

---

[1] Reference to the moving Declaration of Susan K. Slim shall be made hereafter as (Slim Dec. ¶__). Reference to Exhibits attached to the Declaration of Susan K. Slim shall be made as (Ex. "__")

could employ the same internet and communications capabilities Colon enjoyed in her Manhattan office. Ex. "A" at ¶7. FOG also provided her with a home computer and telephone equipment to enable her to work and receive faxes at home. Thus, FOG accommodated each and every one of plaintiff's requests to continue working from home while caring for her infant child. Ex. "A" at ¶7.

Colon had worked full-time at FOG until just prior to giving birth on September 20, 2006, and then resumed working "part-time" at FOG on or about September 26, 2006. Ex. "A" at ¶9-10. FOG anticipated that plaintiff would work approximately 20 to 25 hours per week from home and come into the office only one or two days a week, as needed, although her time sheets indicated she was actually worked 35 or more hours per week. Ex. "A" at ¶11.

While still working at home, on November 15, 2006, Shera L. Haliczer, Director of Human Resources for FOG, conducted a monthly administrative meeting of both FOG and GR&C staff, which plaintiff attended via telephone. Ex. "A" at ¶12. During a discussion regarding an upcoming holiday party, Colon, without cause, made defamatory statements heard by all staff members about FOG's principal, Peter Graf, and GR&C employee, Nancy Kunak, including those of a sexual nature. Specifically, and seemingly without cause, Colon announced, to a room of approximately 20 staff members from both companies, that Ms. Kunak was "dancing on the tables at the party" and "flashed Peter Graf her boobs at the last holiday party." Ex. "A" at ¶¶13-14. Despite Ms. Haliczer's repeated requests, plaintiff refused to apologize to Peter Graf, Nancy Kunak or any other staff members present at the meeting. Ex. "A" at ¶15. The embarrassment and disruption to management caused by Colon is obvious.

Colon's defamatory comments, however, were hardly an isolated example of plaintiff's increasing insubordination and improper behavior. For example, prior to the November 15, 2006

incident, while working "part-time" from "home," plaintiff made arrangements to accompany a firm client to a meeting at a bank in New York City. Without notifying FOG that the meeting was even scheduled, Colon obtained transportation to the meeting from the client and brought her infant child along with her without permission. In addition to acting unprofessionally by bringing an infant to a business meeting, Colon exposed FOG to unwarranted liability in violation of explicit company policy.

In a separate incident, plaintiff convinced Francis Nars, a FOG client, to issue her a credit card, in her name, to allow her to charge matters directly to that client. This, too, was in direct contravention of FOG policy and FOG was ultimately alerted to plaintiff's persistent attempts to solicit its clients by using the autonomy and equipment with which FOG entrusted her to work independently, part-time, at home, in lieu of maternity leave. Ex. "A" at ¶16. These incidents violated FOG policy that "No staff member may be employed or engaged by a client in an individual capacity separate and apart from the Firm's association with such client." Ex. "C" at 6.

Given Colon's increasingly frequent disciplinary issues, unprofessional behavior and refusal to apologize for her inappropriate comments at the November 15, 2006 staff meeting, FOG terminated plaintiff's employment on November 17, 2006. Ex. "A" at ¶19.

### The State Court Action

Colon's defamatory comments and misconduct, coupled with her refusal to rescind her statements or issue an apology of any sort, compelled Peter Graf and Nancy Kunak to commence an action against Colon for slander, slander per se and infliction of emotional distress. That lawsuit, entitled *Peter Graf and Nancy Kanuk v Paola B Colon*, was filed in Supreme Court of the State of New York, County of Westchester, under Index Number 23329/06, on November 28,

4

2006 ("State Court Action"). *See* Ex. "D". On or about January 30, 2007, Colon filed a pre-answer motion to dismiss the complaint against her. *See* Ex. "E."

On February 21, 2007, after FOG learned that Colon had persistently solicited its clients during her stint as a part-time employee, Peter Graf and Nancy Kanuk filed an Amended Complaint that named FOG as a plaintiff and raised the additional causes of action for Breach of Fiduciary Duty and Tortuous Interference with Contract. *See* Ex. "F" at 6- 8. Colon, who had "voluntarily" withdrawn an earlier pre-answer motion to dismiss the initial complaint, then filed a pre-answer motion to dismiss the Amended Complaint. Ex. "G," Colon Affidavit, at 5.

Despite the clearly reasonable and arguably generous accommodations with which FOG had provided her, Colon, in her Affidavit in Support of her motion to dismiss the Amended Complaint, alleged that the action against her was "a pretext for the firm to attempt to deprive [her] of [her] maternal rights." Exhibit "G," Colon Affidavit, at Point II. Colon's allegations were based, in large part, upon a standard release FOG sought upon her termination, by which FOG offered Colon the opportunity to "resign" in lieu of terminating her employment for cause, and providing her a generous severance package to which she was not entitled. *See* Ex. "H" at ¶¶ 1-3.

In consideration of FOG's offer of a severance package, FOG assured Colon it would stipulate to discontinue the underlying action against her, with prejudice. Ex. "H" at ¶4. Colon however, argued that "General Release" language was an underhanded attempt to prevent her from filing a subsequent lawsuit against FOG for, among a litany of other reasons, liability based on "gender" or "pregnancy." *See* Ex. "G," Colon Affidavit, at ¶8; *see also* Exhibit "H" at ¶4. FOG, on the other hand, extended the release offer to resolve, without the unnecessary intervention of the Courts, Colon's as use of FOG equipment and materials to solicit its clients,

even after her "separation" from the company, and to compel FOG to terminate her employment. *See* Exhibit "A" at ¶18. Since Colon was aware that FOG did not have an establish severance policy favoring those that voluntarily resigned, and taking into account Colon's rejection of FOG's offer of unpaid maternity leave due to financial difficulties, it was reasonable for FOG to interpret Colon's behavior as an attempt to induce termination and secure severance benefits that she would not truly be entitled. *See* Exhibit "A" at ¶¶5, 18.

Only *after* having first raised allegations of discriminatory acts in the State Court Action by her motion to dismiss the Amended Complaint, and *before* submitting her Verified Answer thereto, Colon filed a Notice of Charge against FOG and GR&C with the United States Equal Employment Opportunity Commission ("EEOC"). *See* Ex. "I." Colon's EEOC Charge alleges only that that FOG asked her to come in to work on one day, October 11, 2006, a request well within her agreement with FOG that she be available to work 2 to 2 ½ days a week, as necessary. *See* Ex. "I."

On April 13, 2007, Justice Mary H. Smith issued a Decision and Order granting Colon's motion to dismiss the infliction of emotional distress cause of action against her *only*, but otherwise refused to dismiss remaining causes of action raised by the Amended Complaint. Ex. "J." Significantly, Judge Smith also held that GR&C was not a necessary party to the State Court Action because GR&C was not Colon's employer because Colon, "at the relevant time, had worked exclusively for FOG and . . . her duty of loyalty had been to said entity." Exhibit "J" at 2. Notably, Colon's EEOC Charge was based on the sole allegation that GR&C, not FOG, asked that she come in to work on one single occasion. Yet, Judge Smith ruling established that FOG, not GR&C, was plaintiff's employer during all times relevant hereto. Ex. "J" at 2; *see also* Exhibit "G." Plainly, then, GR&C is not a proper defendant in this action.

Judge Smith further ruled that the Amended Complaint, as pled, was sufficient to sustain causes of action against Colon seeking damages for slander, slander per se, breach of contract and tortuous interference with contract, all of which are still currently pending before the state court. *See, generally,* Ex. "J." Curiously, after the Court issued its decision and prior to Colon filing her Verified Answer to the Amended Complaint in the State Court Action, her attorney, on or about April 23, 2007, submitted a supplemental letter to the EEOC, raising purported violations of the FMLA, Americans with Disabilities Act and Title VII. *See* Ex. "K." Notably, the supplemental EEOC letter failed to set forth any specific examples of discriminatory actions by FOG to justify Colon's conclusory allegations of statutory violations. *See* Ex. "K."

Colon thereafter served a Verified Answer to the remaining causes of action in the Amended Complaint, in which she also asserted a novel counterclaim against non-party GR&C. Ex. "L" at ¶4. Colon therein alleged that the "sole purpose of the Release and this lawsuit [was] to pressure [her], who ha[d] recently given birth, to forego her rights to time off to nurture her child under the Family and Medical Leave Act and other statutes." Ex. "L" at ¶4. Given this spurious allegation, the plaintiffs in the State Court Action moved to dismiss the counterclaim. *See* Ex. "M".

On or about September 18, 2007, plaintiff, who failed to oppose the motion to dismiss her counterclaim despite having every opportunity to do so, requested and received a "Right to Sue Letter" from the EEOC. *See* Ex. "N." On September 26, 2007, the Hon. Mary H. Smith issued a Decision and Order dismissing Colon's counterclaim. *See* Ex. "O." By its decision, the state court held that "defendant [Paola Colon] not only has failed to state a viable cause of action under the Federal Medical Leave Act, but that *the documentary evidence supports the finding that no such claim exists.*" Ex. "O" at 1-2 (emphasis added).

7

Notwithstanding that the state court Orders, from which no appeal has been taken, establish that GR&C was not plaintiff's employer at any time relevant to this action and that Colon does not have a substantive claim under the FMLA, plaintiff now improperly asks this Court to allow her a second chance to pursue these claims. Further, given that pregnancy cannot sustain a claim under the American with Disabilities Act, and a viable Title VII claim has not been pled, for these and the reasons set forth below, plaintiff's complaint should be dismissed in its entirety.

### ARGUMENT

A court, "[w]hen presented with motions to dismiss on both 12(b)(1) and 12(b)(6) grounds…must first decide the 12(b)(1) motion as defenses and objections are moot if the court does not have subject matter jurisdiction over the complaint." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp.2d 550, 554 (S.D.N.Y. 2007), *citing Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 675 (2d Cir. 1990). A district court faced with "question[s] of jurisdiction . . .can refer to evidence outside the pleadings. …" *Id, citing, Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). This is particularly the case here given that, in the complaint before this Court, plaintiff specifically refers to the State Court Action. Ex. "P" at ¶12.

As the party asserting jurisdiction "must prove by a preponderance of the evidence" that jurisdiction exists, it is, therefore, plaintiff's burden of establishing the court's jurisdiction. *Abrahams*, 473 F. Supp.2d at 554 For the reasons set for above and as follow, plaintiff cannot meet that burden both because this action as a whole is inextricably intertwined with issues in the State Court Action. The claims against GR&C and any allegations of FMLA violations must be dismissed, pursuant to Fed. R. Civ. P. 12(b)(1), at minimum, because they have already been brought forth and rejected in the State Court Action.

In reviewing a 12(b)(6) motion, a court's review is limited to facts "stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Id., citing Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). Thus, "the court must accept the factual allegations contained in the complaint as true, and view the pleadings in the light most favorable to the non-movant, drawing all reasonable inferences in its favor." *Id., citing Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

However, dismissal is appropriate under Fed. R. Civ. P. 12(b)(6), "if it appears beyond doubt that a plaintiff can prove no set of facts entitling it to relief in support of its claim." *Zerilli-Edelglass v N.Y. City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003). The law is clear that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002), *quoting Gebhardt v Allspect, Inc.*, 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000) (internal citation and quotation marks omitted). Accordingly, even if this Court were to disagree with defendants' argument that plaintiff cannot meet the burden necessary to establish subject matter jurisdiction, plaintiff's Complaint must nonetheless be dismissed in its entirety for failure to state a cause of action upon which relief may be granted, under Fed. R. Civ. P. 12(b)(6).

**Point I:    Plaintiff's Federal Action is Barred by Fed. R. Civ. P. 12(b)(1)
For Lack of Subject Matter Jurisdiction**

The April 13, 2007 Decision and Order of the Hon. Mary H. Smith made clear that the portion of Colon's Motion to Dismiss the Amended Complaint for failure name an indispensable party, GR&C, was entirely without merit. Rather, the court ruled that GR&C was not a necessary party to that action because Colon, at all times relevant therein "worked exclusively for FOG and . . . her duty of loyalty had been to said entity." Ex. "I" at p. 2; *see also* Ex. "G."

In so ruling, the state court conclusively established that Colon has no basis for her employment based discrimination claims in this action against GR&C, particularly in light of established precedent that, to sustain the employment based claims asserted, a target defendant must be an "employer". *See Arculeo v. On-Site Sales & Mktg.*, L.L.C., 425 F.3d 193, 197 (2nd Cir. 2005) (holding Title VII only permits imposition of liability upon an "employer"); *Corr v. MTA Long Island Bus*, 1999 U.S. App. LEXIS 25058 (2nd Cir. 1999) (holding that by analogy to Title VII the term "employer" under ADA should not be extended).

Likewise, the September 26, 2007, Decision and Order of the Hon. Mary H. Smith dismissing Colon's sole counterclaim, in which she averred that actions of non-party GR&C constituted a coercive attempt to compel plaintiff to forego her maternal rights under the FMLA, failed to state a viable cause of action and, further, that *the documentary evidence supports the finding that no such claim exists.*" Ex. "N" at 2 (emphasis added).

Given the prior decisions in the State Court Action, this Court should not countenance plaintiff's attempts to saddle both it and the defendants with the unwarranted expense of re-litigating either the FMLA action or claims against GR&C for such are barred by the Rooker-Feldman Doctrine, which alone precludes this action, as well as the Doctrine of Collateral Estoppel.

### A.    The Rooker-Feldman Doctrine

The Rooker-Feldman Doctrine precludes a federal court from considering claims decided by a state court or claims "inextricably intertwined" with an earlier state-court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *Dist. of Columbia Ct. App. v. Feldman*, 460 U.S. 462, 476 (1983). A federal claim is considered "inextricably intertwined" with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided

10

the issues before it." *Mackenzie v Donovan*, 375 F.Supp.2d 312, 319 (S.D.N.Y. 2005) (internal quotations omitted). A party, having lost in state court, is precluded, by virtue of the doctrine, "from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994). Here, not only has the state court adjudicated the FMLA action and rights against GR&C, but the reason for Colon's termination for defamatory conduct and breach of the duty of loyalty remain squarely before the state court.

The Rooker-Feldman Doctrine addresses the limited jurisdiction of Article III courts to adjudicate matters already decided by state courts. In fact, the Second Circuit recently extended the Supreme Court's application of the Rooker-Feldman doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Hoblock v Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005), *citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). Colon seeks to do exactly that here with respect, at least, to GR&C and the FMLA.

In light of the Supreme Court's decision in *Exxon Mobil*, the Second Circuit instructed that a four-part test be applied to determine whether an action is barred pursuant to the Rooker-Feldman Doctrine: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced. *See Hoblock*, 422 F.3d at 85 (internal citations omitted).

3072263 1

Plaintiff filed her Complaint before this court on October 26, 2007, *after* she lost two critical motions in state court. First, the state court's April 13, 2007 decision determined that Colon, at all times relevant herein, "worked exclusively for FOG and...her duty of loyalty had been to said entity." Ex. "J" at 2. Second, the state court's September 26, 2007 decisions categorically denied the validity of any claim made by plaintiff under the FMLA. Ex. "O" at 2. By circumventing the state's appellate procedure and filing a claim before this Court for employment discrimination against an entity specifically determined *not* to have been her employer, coupled with the FMLA action already denied in the state court, plaintiff is obviously complaining of injuries caused by the state court and seeks to compel this Court to review and reject these prior decisions. Accordingly, plaintiff's federal action meets all four prongs of the Rooker-Feldman Doctrine and must, therefore, be dismissed.

## B.    The Doctrine of Collateral Estoppel

New York law is clear that "if an issue is clearly raised in a prior action or proceeding and decided against that party, or those in privity, whether or not the tribunals or causes of action are the same, that party is barred by collateral estoppel from relitigating the same issue." *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 344 (S.D.N.Y. 2005), *quoting Green v. Montgomery*, 43 F. Supp. 2d 239, 242 (E.D.N.Y. 1999) (internal citations omitted). Proper invocation of the doctrine of collateral estoppel requires that two conditions first be met. "(1) there must be 'an identity of issue which has necessarily been decided in the prior action and is decisive of the present action,' and (2) there must have been 'a full and fair opportunity to contest the decision said to be controlling.'" *Id.*, *quoting Mitchell v. Keane*, 974 F. Supp. 332, 339 (S.D.N.Y. 1997) (internal citations omitted); *see also, Colón v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995). Here,

both conditions have been met, both as to the propriety of GR&C as a defendant and the validity of plaintiff's FMLA action.

In her March 8, 2007 Motion to Dismiss the Amended Complaint, Colon clearly identified the issue of whether GR&C was an indispensable party, as her *employer*, which is decisive in the present action, wherein plaintiff seeks damages for GR&C's allegedly discriminatory actions against her. *See* Ex. "G." It has been clearly determined, however, by a state court of competent jurisdiction that GR&C was not, at any time relevant herein, plaintiff's employer. Ex. "J" at p. 2. Indeed, in support of her motion, plaintiff submitted an affidavit, in her own name, with exhibits allegedly supporting her arguments and an accompanying Memorandum of Law. *See* Ex. "G." Plaintiff, therefore, had a full and fair opportunity both to support her argument that GR&C was her employer and to contest the Court's ruling that all the available evidence established that plaintiff was employed by FOG, an entity legally distinct from GR&C. *See* Ex. "G"; Ex. "J" at p. 2.

Plaintiff is likewise estopped from asserting a claim under the FMLA as by the September 26, 2007, Decision and Order of the Hon. Mary H. Smith, wherein the state court held that that Colon failed to state a viable cause of action for violation of the FMLA and, further, that "the documentary evidence supports the finding that no such claim exists." Exhibit "O" at 2. Accordingly, GR&C must be dismissed since it was not Colon's employer, as must her FMLA cause of action, in keeping with the doctrine of collateral estoppel.

**Point II:**      **The Complaint Should Also Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)**

In her October 23, 2007 complaint in this action, it is alleged for the first time, that "[d]uring the time Ms. Colon was working for the defendants, the defendants conducted a campaign of sexual hazing an aggression against its female employees and otherwise created a

3072263 1

hostile workplace." Ex. "P" at ¶8. Yet, not only did plaintiff fail to raise this allegation in her EEOC charge, but has not pled any facts to substantiate this allegation or, for that matter, any one of her three conclusory allegations against defendants. *See* Ex. "I"; *see also* Ex. "K"; *see also* Ex. "P."

In fact, all the evidence in this and the State Court Action only establish that: (1) plaintiff declined to exercise her right to maternity leave; (2) FOG complied with each and every one of plaintiff's requests for accommodation to enable her to continue working from home, on an allegedly part-time basis, while caring for her infant child; (3) plaintiff thereafter took advantage of FOG's generosity by using the telephone and computer equipment it provided to engage in a purposeful campaign to solicit FOG clients; (4) plaintiff, not FOG, made inappropriate comments of a sexual nature at a business meeting for which she subsequently refused to apologize; and (5) plaintiff's allegations are but a thinly veiled attempt to further exploit FOG to obtain compensation for damages she never sustained.

In the face of such conclusory allegations, the United States Supreme Court has recently held that "[w]hile a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of h[er] 'entitle-[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the *elements* of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted and third alteration in original). For the reasons set forth herein and in greater detail below, each and every cause of action set forth in plaintiff's Complaint must be dismissed, with prejudice, as a matter of law.

A.    § 105(a) of the Family and Medical Leave Act

Plaintiff alleges, as the sole basis for her claim under § 105(a) of the Family and Medical Leave Act, that "defendants interfered with, restrained, or denied the exercise or the attempt to exercise Ms. Colon's rights to stay home with her baby. The defendants also discharged and discriminated against Ms. Colon for a practice made unlawful by the act: prohibiting her from staying home with her child." Ex. "P" at ¶14. Plaintiff's statements are flatly contradicted by the documentary evidence and are conclusory statements insufficient to survive a review under Fed. R. Civ. P. 12(b)(6).

As an initial matter, the FMLA "provides eligible employees the right to take *unpaid* leave for up to twelve weeks." *Geromanos v. Columbia University*, 322 F.Supp.2d 420, 426 (S.D.N.Y. 2004). It is undisputed that plaintiff declined FOG's offer to provide unpaid maternity leave and, instead, asked that FOG provide her with accommodations to permit her to continue working from home after giving birth to her child. *See* Ex. "A" at ¶¶ 5-11. FOG complied with each and every request for accommodation, spending considerable time and money installing equipment in plaintiff's home. Plaintiff's intent to continue working is further documented by her June 14, 2006 Personnel Action Form, which states that "Paola will work approximately 2 to 2 ½ days per week," between September 25, 2006 through December 25, 2006. Ex. "B."

To establish a prima facie case for interference under the FMLA, plaintiff must establish that: (1) she is an "eligible employee" under the FMLA; (2) defendants constitute an "employer" under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to defendants of her intention to take leave; and (5) defendants denied her benefits to which she was entitled by FMLA. *Family and Medical Leave Act of 1993*, § 105 (a)(1), *29 U.S.C.A. § 2615(a)(1)*; *see also Sabatino v. Flik International Corp.*, 286 F.Supp.2d 327, 335 (S.D.N.Y. 2003). Plaintiff cannot meet her *prima facie* burden because she did not give notice of her

15

intention to exercise her rights under the FMLA, has not even pled that she did so and FOG did not deny her any benefits to which she was entitled thereunder.  On the contrary, the record is rife with examples of that plaintiff never sought leave, such as her continued submission of time sheets and meetings with clients.  Plaintiff's Complaint does not so much as aver the necessary elements of a plausible claim under the FMLA.

Further, Colon has failed to plead any facts as would be necessary to assert a cause of action for retaliation under the FMLA.  A proper claim for retaliation requires that plaintiff alleges the following, conjunctive, elements: (1) she exercised the rights protected under the FMLA; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  *See Geromanos*, 322 F.Supp.2d at 433.  As plaintiff never exercised her rights under the FMLA, and has not pled that she did so, she cannot establish even the first of the four requisite prongs of a cause of action for retaliation.  This claim, too, accordingly must fail.

Notably, FMLA does not require an employee "to give plaintiff *paid* leave, so [an employer is] free to impose conditions…as a condition of providing…paid leave." *Geromanos*, 322 F.Supp.2d at 432.  In addition, "FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave."  *Geromanos* 322 F.Supp.2d at 429 (internal citations omitted). Accordingly, even if the Court were to somehow interpret plaintiff's paid, part-time employment as subject to FMLA requirements, FOG was entitled to impose conditions for providing paid leave and further, could terminate plaintiffs employment for cause for reasons unrelated to the leave.

16

As established at length above, plaintiff was terminated for cause, when she: (1) made inappropriate remarks about Peter Graf and Nancy Kunak in the presence of approximately 20 other FOG and GR&C employees; (2) refused to apologize for those remarks; (3) obtained a credit card in her own name, from a FOG client, in direct contravention of corporate policy; (4) scheduled and attended meetings with FOG clients without necessary disclosure; and (5) solicited existing FOG clients in breach of her fiduciary duty to FOG. Accordingly, plaintiff, who never exercised her FMLA rights to unpaid leave in the first instance and was terminated for reasons wholly unrelated to her pregnancy, cannot sustain an action as a matter of law. These factors, are precisely the reasons why it has already determined, in the State Court Action, that Colon count not sustain an FMLA action.

### B.    § 703(a)(1) of Title VII of the Civil Rights Act of 1964

Plaintiff's claim that defendants "discharged Ms. Colon and otherwise discriminated against her with respect to the terms, conditions or privileges of her employment because of sex" is likewise a conclusory statement that fails to state a cause of action under which relief may be granted under Fed. R. Civ. P. 12(b)(6). Ex. "O" at ¶ 17. As , Colon has failed to plead even the " short and plain statement of the claim showing that the pleader is entitled to  relief." as required under Fed. R. Civ. P. 8(a) . . ."[e]ven given this liberal pleading standard, the complaint must disclose sufficient information to give the defendant fair notice of the factual and legal basis for the claims *Chudnovsky v. Leviton Mfg. Co.*, 158 Fed. Appx. 312  (2nd Cir. 2005) (holding without sufficient facts pled to ascertain the purported discriminatory conduct complaint properly dismissed under Rule 12 (b) (6)) *citing Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000).

In relevant part, Title VII states that "[i] shall be an unlawful employment practice for an employer:

> (1) [T]of fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) [T]o limit, segregate, or classify his employees or applicants for employment in any ways which would deprive or tend to deprive any individual or employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin"

42 U.SC. § 2000(e)(2)(1-2)

In a discrimination case premised on disparate treatment, a plaintiff must establish a *prima facie* case of discrimination by establishing that he or she was treated differently on account of his or her protected class, such as gender. A plaintiff may either present direct evidence of discrimination or proceed under the three step burden shifting analysis first articulated by the United States Supreme Court in *McDonnell Douglass v. Green*, 411 U.S. 792, 803 (1973) ("McDonnell Douglas Test").

As plaintiff has not presented any direct evidence of gender discrimination, she must establish, under the *McDonnell Douglass* test, a *prima facie* case of discrimination by a preponderance of the evidence. To do so, plaintiff must establish that: (1) she is a member of a protected class; (2) she has satisfactorily performed her job; (3) she has suffered an "adverse employment action," such as a demotion or termination; and (4) a causal nexus between the adverse employment action and plaintiff's protected class. *See id.* Where the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its action. Once the defendant has articulated a neutral reason, the burden shift back to the plaintiff to show that her employer's proffered reason was but a mere

3072263 1

pretext for discrimination. *See Reeves v Sanderson Plumbing Prods , Inc ,* 530 U S. 133, 146-147 (2000).

In a Title VII discrimination case premised on disparate impact, an employment practice will be deemed unlawful only if the "complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color religion, sex or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." Plaintiff must demonstrate that "each particular challenged employment practice causes a disparate impact. Plaintiff simply fails to specify *any* FOG employment practice on which she may premise Title VII claim based on disparate impact.

Plaintiff's allegations of unlawful sexual harassment are likewise inadequately pled and completely unsubstantiated.   Plaintiff generally alleges that the defendants "conducted a campaign of sexual hazing and aggression against its female employee and otherwise created a hostile work place." Ex. "P" at ¶8. According to the EEOC, a hostile environment harassment claim is one premised on "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature…[that] has the purpose of effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *29 C.F.R. § 1604.11 (a)(3).*  A hostile work environment is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v Forklift Sys ,* 510 U.S. 17, 21 (1993), *quoting Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 57 (1986).

To maintain such a claim, the aggrieved party must subjectively perceive the environment to be abusive *and* the environment must be one that a reasonably prudent person

would find hostile or abusive. Whether an environment is hostile or abusive depends upon the totality of the circumstances. *See Id.* An employer can establish an affirmative defense to allegations of a hostile work environment if two elements can be shown: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

Defendants clearly fulfilled both prongs required to establish an affirmative defense. The FOG Firm Handbook states that "[a]ny employee who has questions of concerns about any type of discrimination in the workplace is encouraged to bring these issues to the attention of management" and that, further, "[e]mployees can raise concerns and make reports without fear or reprisal." Ex. "C" at 7. All FOG employees, including plaintiff, sign yearly acknowledgements of office guidelines on FOG anti-discrimination and anti-sexual harassment policies. *See "Ex." C1-C4.* In fact, plaintiff, in 2004 and 2005, signed anti-sexual harassment guidelines that outline, in excruciating detail, the policy and procedure by which FOG addresses any concerns about harassment. The guidelines explicitly state that "[t]he company will not condone, permit nor tolerate sexual harassment of employees whatsoever." Ex. "C3"; "C4."

The guidelines further ask that "[e]mployees who believe they have been subject to sexual harassment...immediately bring it to the attention of the office manager or one of the partners" and ensure that "[t]he office manager or one of the partners who receive complaints about sexual harassment or are made aware of conduct constituting sexual harassment are immediately required to notify either Peter Graf or Peter Repetti." *Id.* In addition, the guidelines promise that "[a]ll complaints will be investigated promptly" and that "management will ensure

that there is no coercion, retaliation, intimidation, or harassment directed against any employee who registered a complaint or serves as a witness on behalf of another employee." *Id.* Plaintiff never, in her entire tenure as a FOG employee, made a single allegation of sexual harassment, despite knowing that her claims would be investigated and that she would be protected from reprisal. Accordingly, defendants clearly meet the burden to establish an affirmative defense to plaintiff's baseless allegations.

Further, as already established, plaintiff was fired *for cause*, for reasons wholly unrelated to her gender. Notably, plaintiff progressed from a position at GR&C as a receptionist and was promoted, as an exclusive employee of FOG, to a bookkeeper and administrative assistant with substantial autonomy. In addition, defendants' willingness to accommodate plaintiff, with equipment and increased technological access, for the duration of her part-time, paid leave, underscores FOG's trust in plaintiff and her abilities. It is plaintiff's actions, not FOG's, that led to her termination and, as such, plaintiff's claim is without merit and must be dismissed as a matter of law.

### C.    § 102(a) of Title I of the A.D.A. of 1990

Colon's final cause of action, under the Americans with Disabilities Act, is the most insufficiently pled of all. Plaintiff, again, makes but a single, conclusory statement in support thereof, charging defendants with discrimination based on her "maternity status." Ex. "P" at ¶ 17. To sustain a charge of discrimination in violation of the ADA, however, plaintiff must establish a *prima facie* case by showing: (1) the plaintiff has a "disability"; (2) the plaintiff is a "qualified" individual; and (3) the employer took adverse action against the plaintiff based on the disability.

21

As here pled, plaintiff cannot even establish the first of the three requisite elements. This is simply because "[e]very court to consider the question of whether pregnancy in and of itself is a 'disability' within the meaning of the ADA has concluded that it is not." *Minott v Port Authority of N.Y and N.J.,* 116 F.Supp.2d 513, 525 (S.D.N.Y. 2000), *citing Conley v United Parcel Service,* 88 F.Supp.2d 16, 19 (E.D.N.Y. 2000); and *Martinez v N.B.C. Inc. and M.S.N.B.C. Inc.,* 49 F.Supp.2d 305, 309 (S.D.N.Y. 1999). Plaintiff's having pled "maternity," rather than "pregnancy," does not alter the fact that a woman, whether pregnant or with an infant child, just does not constitute an actionable disability under the ADA.

Unlike Colon, one is "disabled" under the ADA where he or she: (i) has a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). However, pregnancy, and related medical conditions, such as lactation or, motherhood, absent unusual circumstances, is not considered a disability under the ADA. *See, e.g., Bond v. Sterling,* 997 F. Supp. 306, 311 (N.D.N.Y. 1998) (holding that it "is simply preposterous to contend that a woman's body is functioning abnormally because she is lactating").

In fact, "EEOC regulations, which are entitled to substantial deference by this Court, in construing the ADA, explicitly excludes normal physical conditions, such as pregnancy, that are not the result of a physiological disorder.'" *Martinez,* 49 F.Supp.2d at 309 (S.D.N.Y. 1999), *quoting* 29 C.F.R.Pt. 1630, App. § 1630.2(h), at 347 (1998). No associated physiological disorder is even pled. Given that neither pregnancy nor motherhood constitutes a disability under the ADA, this aspect of the complaint should be also dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Graf Repetti & Co., LLP and Family Office Group, LLC respectfully submit that their motion to dismiss the complaint be granted in its entirety or, in the alternative, that defendant Graf Repetti & Co. and the Family and Medical Leave Act cause of action be dismissed, together with such other and further relief as this Court deems just and proper.

Dated:     New York, New York
           December 17, 2007

                        Respectfully submitted,

            WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

            By: _____
                Susan K. Slim (SKS-3785)
                Attorneys for Defendants
                **Graf Repetti & Co., LLP and Family Office
                Group, LLC**
                150 East 42nd Street
                New York, New York 10017-5639
                (212) 490-3000
                File No. 09348.00059

Of Counsel:
David S. Sheiffer (DSS-4198)

23

3072263 1

## CERTIFICATE OF SERVICE

The undersigned, a member in good standing of the bar of this Court, hereby certifies that

on December 17, 20076, she served a true and correct copy of the Notice of Motion to Dismiss

the Complaint pursuant to F.R.C.P. Rule 12 (b) (1) and/or  Rule 12 (b) (6)r the Declaration of

Susan K. Slim and the Memorandum of Law of Defendants Graf Repetti & Co., LLP and Family

Office Group, LLC on:

> Roy A. McKenzie, Esq.
> *Attorneys for Plaintiff*
> 641 Lexington Avenue, 20th Floor
> New York, NY 10002

Via Federal Express and that the original of the within pleadings were sent electronically to the

Clerk of the United States District Court, Southern District of New York, on this same date,

along with a courtesy copy Via Federal Express.

By: _____

Susan K. Slim
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
150 East 42nd Street
New York, New York 10017
(212) 490-3000

24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAOLA B. COLON,

            Plaintiff,

  -against-

GRAF REPETTI & CO., LLP and
FAMILY OFFICE GROUP, LLC,

            Defendants.

**Civil Action
No.: 07-9572**

**CERTIFICATION OF
MAILING**

**Hon. Robert. P. Patterson, Jr.**

Return Date:  January 17, 2008

I, Glennis M. Syder, certify as follows:

1.    I am a secretary employed by the law firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys for Defendants Graf Repetti & Co., LLP and Family Office Group, LLC.

2.    I made service of the within Memorandum of Law upon the following:

        Roy A. McKenzie, Esq.
        *Attorneys for Plaintiff*
        641 Lexington Avenue, 20th Floor
        New York, NY 10022
        (212) 832-3696
        Fax: (212) 371-6632
        Email: ramck@mindspring.com
        **VIA FEDERAL EXPRESS**

3.    I certify that the original of the within pleadings were sent electronically to the Clerk of the United States District Court, Southern District of New York, on this same date.

3072630.1

Dated:    New York, New York
          December 17, 2007

                                    By: _____
                                            Glennis M. Syder

Sworn to Before Me This
17th day of December, 2007

_____
Notary Public

> SUSAN K. SLIM
> NOTARY PUBLIC, State of New York
> No. 02SL6144338
> Qualified in New York County
> Commission Expires April 24, 2010

2

3072630.1